**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MICHAEL FITCH**                                                                          **PLAINTIFF**
*Surviving Spouse of Ellen Fitch, Deceased*

**v.**                                                          **CIVIL ACTION NO. 2:14-cv-26-KS-MTP**

**CAROLYN W. COLVIN**                                                          **DEFENDANT**
*Commissioner of Social Security Administration*

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Michael Fitch ("Plaintiff"), on behalf of his deceased wife, Ellen Fitch ("Fitch"),

brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of

the Commissioner of Social Security Administration denying Fitch's claim for disability

insurance benefits and supplemental security income.  The matter is now before the Court on the

Plaintiff's Motion for Summary Judgment [8] and Defendant's Motion to Affirm the

Commissioner's Decision [10].  Having considered the pleadings, the record, and the applicable

law, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**PROCEDURAL HISTORY**

On September 28, 2010, Fitch applied for disability insurance benefits and supplemental

security income payments under the Social Security Act, alleging disability as of September 25,

2010, due to degenerative disc disease; problems with her neck, mid-back, and spine; and

depression. (Administrative Record [6] at 103, 196.)[1]  Fitch's claim was denied initially and

upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge

---

[1] For ease of reference and pursuant to the Court's Scheduling Order [3], the administrative record is cited to herein by reference to the Court's docket number and docket page number in the federal court record (not the Administrative Record page number).

("ALJ"). ([6] at 103-06, 123-25.)  On May 1, 2012, a hearing was convened before ALJ Laurie

H. Porciello.  The ALJ heard testimony from Fitch and Donald Woodall, a vocational expert. ([6]

at 58-90.)  On September 5, 2012, the ALJ issued a decision finding that Fitch was not disabled.

([6] at 21-32.)  On October 31, 2012, Fitch appealed the ALJ's decision. ([6] at 15-17.)  On May

25, 2013, Fitch died, and her widower, Michael Fitch, continued the claim. ([6] at 12, 14.)  On

February 5, 2014, the Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner. ([6] at 5-8.)

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff filed a complaint in

this Court on February 21, 2014, seeking an order granting benefits to Plaintiff.  The

Commissioner answered the complaint, denying that Plaintiff is entitled to any relief.  The

parties briefed the issues in this matter pursuant to the Court's Order [3], and the matter is now

ripe for decision.

## MEDICAL/FACTUAL HISTORY

Fitch was forty-seven years old at the time of the hearing before the ALJ on May 1, 2012.

([6] at 63.)  Her alleged disability onset date was September 25, 2010. ([6] at 103.)  She earned a

general equivalency diploma and had past work experience as a cashier, answering service

operator, office clerk, waitress, quality control worker, and food service manager. ([6] at 64, 84,

196, 214-21.)  According to Plaintiff, Fitch had a history of pain in her back and neck,

degenerative disc disease, asthma, high blood pressure, fractured ankle, anxiety, depression,

bipolar disorder, insomnia, suicide attempts, choking and swallowing problems, left sided

numbness, ataxia, and urinary incontinence. (Brief [9] at 5-6.)

In March of 2006, Fitch was involved in a motor vehicle accident and, as a result,

underwent an anterior fusion of her spine at the C6 and C7 vertabrae.  During post-operation

visits, medical professionals indicated that she was recovering well and referred her to a pain

management physician. ([6] at 351-54.)  At that time, her physician observed that "Ms. Fitch is

doing remarkably well." ([6] at 354.)

    In October and November of 2009, Fitch sought treatment from NewSouth NeuroSpine

("NewSouth"). ([6] at 247-52.)  Fitch indicated that she developed neck pain in September of

2006 and lower back pain in October of 2007. ([6] at 247.)  Fitch's treating physicians provided

a transcutaneous electrical nerve stimulation ("TENS") unit and recommended physical therapy

and pain medication injections. ([6] at 247-52.)  On January 27, 2010, one of the physicians at

NewSouth stated that Fitch "has overall been doing very well, has responded favorably to the

physical therapy . . . ." ([6] at 250.)  There were, however, instances where Fitch indicated that

she was experiencing sudden onsets of neck pain. ([6] at 375.)  In May of 2010, after Fitch

suffered a fall, a radiograph was taken of the lumbar region of her spine and a physician found

very mild facet hypertrophy[2] and sclerosis[3] but found no evidence of spondylolysis.[4] ([6] at 271.)

    On February 9, 2011, Dr. Andrew Yates performed a consultative examination on Fitch.

([6] at 320-22.)  Dr. Yates observed that Fitch showed a decreased range of motion of her left

shoulder but her remaining upper extremities and lower extremities showed a full range of

_____

    [2] Hypertrophy is the enlargement or overgrowth of an organ or part due to an increase in
size or its constituent cells. Dorland's Illustrated Medical Dictionary 859 (29th ed. 2000).

    [3] Sclerosis is an induration or hardening, such as hardening of a part from inflammation,
increased formation of connective tissue, or disease of the interstitial substance. Dorland's
Illustrated Medical Dictionary 1611 (29th ed. 2000).

    [4] Spondylolysis is the dissolution of a vertebra; a condition marked by platyspondylia,
aplasia of the vertebral arch, and separation of the pars interarticularis. Dorland's Illustrated
Medical Dictionary 1684 (29th ed. 2000).

3

motion. ([6] at 321.)  She was unable to heel walk or toe walk.  She used a cane for support but could walk without it.  Dr. Yates's impressions were that Fitch had (1) cervical disc disease with radiculopathy, (2) degenerative disc disease of the lumbar spine with radiculopathy, (3) depression, and (4) hypertensive cardiovascular disease. ([6] at 322.)

In February of 2011, Dr. William Hand, a medical consultant, assessed Fitch's medical records.  Dr. Hand found that Fitch could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour day, and push/pull without limitation. ([6] at 325.)

Regarding Fitch's mental health and substance abuse history, the record indicates that, on September 29, 2010, Fitch overdosed on multiple drugs including Xanax and Soma. ([6] at 263.) Fitch also consumed alcohol. ([6] at 263.)  Fitch reported being depressed and having suicidal thoughts. ([6] at 263.)

On October 8, 2010, Fitch again overdosed on Xanax. ([6] at 255.)  Fitch received treatment from Region 8 Mental Health Center.  During her treatment, Fitch was prescribed Abilify and Trazodone and, on November 1, 2010, she reported that the medications were "doing really well for her." ([6] at 300.)  She also reported that she was controlling her alcohol consumption. ([6] at 300.)

On February 2, 2011, Dr. Lisa Yazdani performed a consultative examination of Fitch. ([6] at 313-16.)  Fitch reported that she had a history of mental health treatment and reported that she had taken a lot of pills with alcohol in the past. ([6] at 314.)  Dr. Yazdani observed that Fitch's mood was depressed and her affect was labile.  Dr. Yazdani noted that there were no indications of hallucininations, delusions, obsessions, or compulsions.  Also, there were no disturbances of memory.  Dr. Yazdani's impressions were that Fitch suffered from bipolar

disorder, panic disorder, and depression. ([6] at 315.)  According to Dr. Yazdani, Fitch appeared

capable of performing activities of daily living and routine, repetitive tasks. ([6] at 315.)  Dr.

Yazdani found that Fitch's ability to interact with co-workers and receive supervision appeared

mildly to moderately diminished by her depression and her anxiety. ([6] at 315.)

In March of 2011, Dr. Glenda Scallorn, a medical consultant, assessed Fitch's mental

health records.  Dr. Scallorn found that Fitch had mild restrictions of activities of daily living,

moderate difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence, or pace, and no episodes of decompensation. ([6] at 342.)

## BURDEN OF PROOF

In *Harrell v. Bowen*, the Fifth Circuit detailed the shifting burden of proof that applies to

disability determinations:

> An individual applying for disability and SSI benefits bears the initial burden of
> proving that he is disabled for purposes of the Social Security Act.  Once the
> claimant satisfies his initial burden, the [Commissioner] then bears the burden of
> establishing that the claimant is capable of performing substantial gainful activity
> and therefore, not disabled.  In determining whether or not a claimant is capable of
> performing substantial gainful activity, the [Commissioner] utilizes a five-step
> sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):
>
>> 1.  An individual who is working and engaging in substantial gainful activity
>> will not be found disabled regardless of the medical findings.
>>
>> 2.  An individual who does not have a 'severe impairment' will not be found
>> to be disabled.
>>
>> 3.  An individual who meets or equals a listed impairment in Appendix 1 of
>> the regulations will be considered disabled without consideration of
>> vocational factors.
>>
>> 4.  If an individual is capable of performing the work he has done in the past,
>> a finding of 'not disabled' must be made.
>>
>> 5.  If an individual's impairment precludes him from performing his past

> work, other factors including age, education, past work experience, and
> residual functional capacity must be considered to determine if other work
> can be performed.

862 F.2d 471, 475 (5th Cir. 1988) (citations and footnotes omitted).  A finding that a claimant "is

disabled or not disabled at any point in the five-step process is conclusive and terminates the . . .

analysis." *Id.*

## ADMINISTRATIVE LAW JUDGE'S ANALYSIS

As previously stated, Fitch's hearing before the ALJ occurred on May 1, 2012.  On

September 5, 2012, after considering the testimony and medical records, the ALJ rendered her

decision that Fitch was not disabled. ([6] at 21-32.)  The ALJ determined that Fitch met the

insured status requirements of the Social Security Act through September 30, 2015.  At step one

of the evaluation process,[5] the ALJ found the Fitch had not engaged in any substantial gainful

activity since September 25, 2010, the alleged onset date.  At step two, the ALJ found that Fitch

suffered from the following severe impairments: mild obesity, cervical disc disease with

radiculopathy, degenerative disc disease of the lumbar spine, and substance abuse with

depression and anxiety, which are severe while she is abusing substances. ([6] at 23-24.)

At step three, the ALJ determined that Fitch had impairments, including a substance

abuse disorder, that met or medically equaled Listing 12.04 of 20 C.F.R. § 404, Subpart P,

Appendix 1. ([6] at 24.)  Listing 12.04 covers affective disorders which are characterized by a

disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  The ALJ

found that Fitch, while abusing substances, had episodes of depression with suicidal ideation,

---

[5] The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(a).

loss of appetite, decreased sleep, and feelings of anxiousness.  The ALJ also found that Fitch, while abusing substances, had moderate restriction in activity of daily living, marked difficulties in social functioning, and marked difficulties maintaining concentration, persistence or pace. ([6] at 24-25.)

The ALJ's analysis, however, did not end at step three because there was evidence in the record of drug addition and alcoholism.  If an ALJ determines that a person is disabled, but there is medical evidence of addiction or alcoholism, the ALJ must determine whether that substance use is a contributing factor material to the disability determination. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a).

Thus, the ALJ reevaluated Fitch's physical limitations.  At step two, the ALJ determined that, if Fitch stopped the substance use, her remaining limitations would cause more than a minimum impact on her ability to perform basic work activities.  The ALJ determined that Fitch would continue to have a severe impairment or combination of impairments. ([6] at 25.)

The ALJ also reevaluated Fitch's mental limitations and determined that, if Fitch discontinued her substance use, she would no longer have severe mental limitations.  The ALJ considered the impact Fitch's mental limitations would have on the four broad functional areas set out in the disability regulations for evaluating mental disorders.  The ALJ determined that Fitch's anxiety and depression would produce mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. ([6] at 25-26.)

Returning to step three, the ALJ determined that, if Fitch stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals the

7

severity of one of the listed impairments in 20 C.F.R. § 404, Subpart p, Appendix 1. ([6] at 26-27.)  In order to make a determination at step four, the ALJ assessed Fitch's Residual Functional Capacity ("RFC").[6]  The ALJ found that:

> [Fitch] would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:
>
> remains capable of lifting twenty pounds at a time; frequently lifting or carrying of objects weighing up to ten pounds; standing and walking six hours in an eight-hour workday; and sitting, pushing and pulling as required in light work, if allowed the option to walk around briefly (no more than five minutes) after sitting for thirty minutes, and to sit briefly after standing or walking for thirty minutes.  The undersigned has considered all of the claimant's impairments and subjective assertions, to the extent credible, in finding that while the claimant has no limitations with the dominant upper extremity, she should only occasionally use the non-dominant upper extremity to reach, handle finger or feel.

([6] at 28-29.)

The ALJ also considered Fitch's nonexertional capacity, including her ability to understand; carry out and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting.  The ALJ found that, if Fitch stopped the substance use, she would be capable of meeting the mental demand of work, if limited to performing simple, routine, repetitive tasks. ([6] at 29.)  According to the ALJ, in making these findings regarding Fitch's RFC, she considered opinion evidence and considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence. ([6] at 27-30.)

---

[6] "Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

8

At step four, the ALJ found that Fitch was not capable of performing past relevant work as a cashier, answering service operator, office clerk, server, quality control worker, or food service manager. ([6] at 30.)  Finally, at step five, the ALJ concluded that, if Fitch stopped the substance abuse, she could perform a significant number of jobs in the national economy.  The ALJ based this conclusion on the testimony from the VE and Fitch's age, education, work experience, and RFC.  The jobs included a booth cashier, gate attendant, and information clerk. Accordingly, the ALJ found that Fitch was not disabled. ([6] at 30-31.)

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).   To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell*, 862 F.2d at 475.  If the decision is supported by substantial evidence, it is conclusive

and must be affirmed. *Selders*, 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff argues that the ALJ erred in making her determinations and the Commissioner erred in accepting those determinations.  Plaintiff has raised three assignments of error.  First, Plaintiff argues that one consultative examiner's conflict with treating physicians, and the remainder of the evidence, cannot support a denial of disability.  Second, Plaintiff argues that the Commissioner failed to evaluate the underlying mental illness of Ellen Fitch as a disabling element independent of, but exercising a causative effect upon, the claimant's intermittent self medication through alcohol and prescription drugs.  Third, Plaintiff argues that it was reversible error for the ALJ to ignore pain and the debilitating effect of pain on concentration.

### Issue No. 1:  Whether the ALJ gave proper weight to the opinions of the medical professionals.

Plaintiff argues that the ALJ failed to properly assess the opinions of the medical professionals in this case.  Plaintiff maintains that the evidence from Fitch's treating sources conflicts with the ALJ's decision and sufficiently establishes that Fitch was disabled.

The ALJ was required to consider the factors set forth at 20 C.F.R. §§ 404.1527(c)(1)-(6) in deciding the weight to give the medical opinions.  These factors include: (1) whether the source of the opinion has examined the plaintiff; (2) whether the source of the opinion has a treatment relationship with the plaintiff, and the nature, extent, and length of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion

is consistent with the record as a whole; (5) whether the source of the opinion is a specialist; (6) any other factors that support or contradict the opinion (including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has"). 20 C.F.R. §§ 404.1527(c)(1)-(6).

A treating physician's opinion on the nature and severity of a patient's impairment must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The law, however, is clear that the ALJ has the sole responsibility of determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown. *Id*. at 456.  Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion. *Id*.  The regulations require the ALJ to perform a detailed analysis of a treating physician's views under the criteria set forth in 20 C.F.R. §§ 1527(c), 416.927(c)[7] in the absence of controverting medical evidence from other treating and/or examining physicians. *Id*. at 453.

Plaintiff argues that the ALJ ignored the evidence from Fitch's treating sources and instead based her decision on one medical consultant's opinion.  The ALJ's opinion, however, demonstrates that she carefully considered the medical records from Fitch's treating sources.

---

[7] Pursuant to 20 C.F.R. §§ 1527(c) and 416.927(c), the factors to be considered are the length of the treatment relationship and the frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors.

11

Plaintiff notes that Fitch's treating physicians diagnosed her with multiple mental health disorders, including anxiety and depression.[8]  The ALJ acknowledged that Fitch suffered from mental disorders.  In fact, the ALJ found that Fitch, while abusing substances, suffered from severe impairments that met or medically equaled Listing 12.04 of 20 C.F.R. § 404, Subpart P, Appendix 1. ([6] at 24-25.)

The ALJ also determined that, if Fitch stopped her substance use, her mental health disorders would produce mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. ([6] at 25-26.)  Substantial evidence, including the records from Fitch's treating physicians, supports this finding.  As explained in greater detail below, the medical records contain multiple references to Fitch's drug and alcohol abuse and the effects thereof.  There is no medical opinion in the record which explicitly states that Fitch would have continued to suffer from disabling limitations even if she discontinued her drug and alcohol use.

Plaintiff asserts that the ALJ's decision was solely based on the opinion of one medical consultant, Dr. Dr. Glenda Scallorn.[9]  The record does not support this assertion.  The ALJ's decision was based on Fitch's medical records as a whole, including records from her treating sources. ([6] at 24-30.)  The record demonstrates the ALJ properly considered the evidence in

---

[8] A diagnosis of an impairment, without more, is insufficient to establish a disability. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

[9] Dr. Scallorn opined that Fitch had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. ([6] at 342.)

this case, including the opinions of the medical professionals.

> **Issue No. 2:    *Whether the ALJ properly considered the effect of substance use on Fitch's mental impairments.***

As previously mentioned, if an ALJ determines that a person is disabled, but there is medical evidence of addiction or alcoholism, the ALJ must determine whether that substance use is a contributing factor material to the disability determination. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a).  If alcohol or drug use is a contributing factor material to the disability determination, the claimant is not considered disabled and is ineligible to receive benefits. *Id*. Whether drug and alcohol use is a contributing factor "depends on whether limitations remaining after stopping drug and alcohol use are sufficient of themselves to find the claimant disabled." *Snodgrass v. Colvin*, 2013 WL 4223640, at *2 (N.D. Tex. Aug. 13, 2013) (citations omitted). "The claimant 'bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability.'" *Id.* (quoting Brown *v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).  Claimants "'must introduce evidence that supports a finding' that they would still be disabled even upon stopping their drug and alcohol use." *Id*. (quoting *Brown*, 192 F.3d at 499).

Fitch had a well documented history of drug and alcohol abuse.  For example, her treating physicians at Region 8 Mental Health Center diagnosed her with polysubstance dependence and referred to her substance abuse multiple times. ([6] at 300-02, 304-05, 308.) The ALJ endeavored to separate the effects of Fitch's mental impairments from the effects of her substance use and determined that, if Fitch stopped the substance use, she would no longer have severe mental limitations.  The ALJ found that Fitch would be capable of meeting the mental demands of work, if limited to performing simple, routine, and repetitive tasks. ([6] at 29.)

The record indicates that, during periods in which Fitch appeared to be controlling her

substance abuse, her impairments significantly improved.  On November 1, 2010, during a mental health evaluation, Fitch stated that "she has had very little to drink and she is very proud of that." ([6] at 300.)  At that time, her medications were "doing really well for her" and she was not experiencing "any significant problems with her social interactions with others." *Id*.

In support of his complaint, Plaintiff cites *Snodgrass v. Colvin*, in which a court found that there was no substantial evidence that the claimant's use of alcohol and drugs was material to her bipolar and anxiety impairments. 2013 WL 4223640 (N.D. Tex. Aug. 13, 2013).  In that case, a medical professional gave an uncontradicted opinion that the claimant "is totally disabled without consideration of any past or present drug and/or alcohol use" and opined that the "[d]rug and/or alcohol use is not a material cause of this individual's disability." *Id*. at * 4.  Unlike *Snodgrass*, in the instant case, there is no medical opinion in the record which states that Fitch would have continued to suffer from disabling limitations even if she discontinued her drug and alcohol use.  Instead, the record contains conflicting evidence regarding the effect alcohol and drugs had on Fitch's limitations.  The Court may not re-weigh the evidence, as conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders,* 914 F.2d at 617.  The Court is limited to determining, without re-weighing the evidence, whether there was substantial evidence in the record as a whole to support the decision that Fitch was not under a disability.

Plaintiff asserts that there is no evidence to support a finding that Fitch's alcohol use continued after her last suicide attempt in October of 2010.  Indeed, the ALJ noted that Fitch testified at the hearing that she had been sober for two years.  The ALJ, however, also noted that Fitch's testimony was inconsistent with Dr. Yazdani's report from a February 2, 2011, evaluation which indicated that Fitch continued to drink cocktails after work. ([6] at 26.)  Thus,

there is support in the record for the finding that Fitch's alcohol use continued after October of 2010.

Plaintiff has failed to meet his burden of proving that Fitch's drug and alcohol use was not a contributing factor to her disability. *Brown*, 192 F.3d at 498. The record contains substantial evidence in support of the ALJ's determination that Fitch drug and alcohol use was a contributing factor material to the disability determination. *See*, *e.g.*, ([6] at 26, 300-08, 313.); *Brown v. Colvin*, 2014 WL 351647, at *4 (N.D. Tex. Jan. 31, 2014).

**Issue No. 3:    *Whether the ALJ properly considered subjective complaints regarding pain.***

Plaintiff argues that the ALJ erred in her assessment of Fitch's subjective complaints regarding pain. An ALJ should consider a claimant's subjective complaints, but a claimant's own statements regarding his or her pain and symptoms are not determinative of disability status. 20 C.F.R. § 404.1529. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

The ALJ was required to make affirmative findings regarding the Plaintiff's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . . ." ([6] at 28.) In making this decision, the ALJ was required to consider the objective medical evidence and several other specific categories of evidence to ensure that her determination was clear and specific. The other categories include:

(1) the individual's daily activities;

15

(2) the location, duration, frequence, and intensity of the individual's symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measure other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p.

The record indicates that the ALJ considered the medical evidence and Plaintiff's testimony at the hearing.  The ALJ detailed her reasons for discounting Plaintiff's allegations regarding her limitations:

> The evidence generally indicates the claimant's medication sufficiently control the symptoms related to her impairments.  In January, 2010, Dr. Summers (her pain management specialist) commented the claimant was doing well and had responded favorably to physical therapy.  Despite her allegations of severe symptoms, the physical exams have shown generally mild to moderate restrictions.  Treating doctors have not posited limitations more restrictive than the current residual functional capacity.  Her clinical exams have been largely within normal limits.  X-rays and other objective tests have shown some abnormalities, but to the extent credible her limitations are accommodated in the residual functional capacity.

([6] at 29) (internal citations omitted).

The ALJ's finding that Fitch's subjective complaints were exaggerated is supported by the evidence, and her reasons are sufficiently articulated in her decision.  Although the ALJ's decision does not expressly mention each of the factors listed in SSR 96-7p, the record demonstrates that the ALJ considered those factors. *See Falco v. Shalala*, 27 F.3d 160, 163-64

16

(5th Cir. 1994). The ALJ discussed Fitch's symptoms, daily activities, medication, alleviating measures, and her ability to perform various tasks. The ALJ pointed out that, after undergoing surgery on her spine, her physician stated that "Ms. Fitch is doing remarkably well." ([6] at 354.) One of Fitch's treating physicians stated that she "has overall been doing very well, has responded favorably to the physical therapy . . . ." ([6] at 250.) The ALJ noted Fitch's daily activities, including the preparation of meals, light household chores, shopping, attending church, and driving. ([6] at 204-11.) The ALJ also noted that her assessment of Fitch's residual functional capacity describes limitations no less restrictive than the limitations described by Fitch's treating physicians. Although the record contains evidence that Fitch experienced pain, Plaintiff failed to meet his burden of proving that Fitch's pain was sufficient to render her disabled. *See Webb v. Shalala*,1994 WL 558779, at *3 (5th Cir. Sept. 19, 1994).

The ALJ's decision is supported by substantial evidence. "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ found that the medical evidence was more persuasive than Fitch's testimony–precisely the kind of determination an ALJ is best positioned to make.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and applies the correct legal standards. It is, therefore, the recommendation of the undersigned that Plaintiff's Motion for Summary Judgment [8] be denied, Commissioner's Motion to Affirm [10] be granted, and the denial of benefits be affirmed.

17

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules, any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the Judge, the Magistrate Judge and the opposing party.  The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 16th day of June, 2015.

s/ Michael T. Parker
United States Magistrate Judge