IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MICHAEL FITCH                                                                                    PLAINTIFF
*Surviving Spouse of Ellen Fitch, Deceased*

V.                                                           CIVIL ACTION NO. 2:14-CV-26-KS-MTP

CAROLYN W. COLVIN                                                                          DEFENDANT
*Commissioner of Social Security Administration*

ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION AND
DISMISSING CASE WITH PREJUDICE, ETC.

This cause is before the Court on the Complaint [ECF No. 1] filed by Michael Fitch ("Plaintiff"), surviving spouse of Ellen Fitch ("Fitch"), appealing the final decision of the Social Security Commissioner denying Fitch's application for Social Security disability insurance. *See* Compl., ECF No. 1. The Commissioner has filed a response to appellant's brief [ECF No. 5] and now moves to affirm the decisions to deny benefits [ECF No. 10]. Magistrate Judge Michael T. Parker has entered a Report and Recommendation [ECF No. 13] recommending that the final decision of the Commissioner be affirmed. Plaintiff filed an objection [ECF No. 14] to the Magistrate Judge's Report and Recommendation. The Court has considered the pleadings of Fitch, the Commissioner, the record, and the Report and Recommendation of Magistrate Judge Parker and for the reasons below does hereby adopt the Report and Recommendation [ECF No. 13] as the opinion of this Court. Accordingly, Plaintiff's Motion for Summary Judgment [ECF No. 8] is **denied**, Commissioner's Motion to Affirm [ECF No. 10] is **granted**, and this matter is dismissed **with** prejudice.

I. BACKGROUND

In March of 2006 Fitch was involved in a motor vehicle accident. As a result, she underwent an anterior cervical discectomy and fusion for a fracture/dislocation at C6 and C7 vertebrae in her spine. Administrative R., ECF No. 6 at 353.[1] During post-operation appointments, Fitch's surgeon Dr. Garber referred Fitch to a pain management physician and noted that Fitch was "doing remarkably well." *Id.* at 351-54.

In October and November of 2009, Fitch sought treatment from NewSouth NeuroSpine ("NewSouth"). *Id.* at 247-52. Fitch indicated she developed neck pain in September of 2006 and lower back pain in October of 2007. *Id.* at 247. Fitch's treating physicians provided a transcutaneous electrical nerve stimulation ("TENS") unit and recommended physical therapy. *Id.* at 248-52. On January 27, 2010, one of the physicians at NewSouth stated Fitch "has overall been doing very well [and] has responded favorably to the physical therapy . . . ." *Id.* at 250. In May of 2010, after suffering from a fall, a radiograph was taken of the lumbar region of

---

[1] For ease of reference and pursuant to the Court's Scheduling Order [ECF No. 3], the administrative record is cited to herein by reference to the Court's docket number and docket page number in the federal court record (not the Administrative Record page number).

Fitch's spine. The physician found very mild facet hypertrophy[2] and sclerosis[3] but found no evidence of spondylolysis.[4] *Id.* at 271.

On February 9, 2011, Dr. Andrew Yates performed a consultative examination on Fitch. *Id.* at 320-22. Dr. Yates observed that Fitch showed a decreased range of motion in her left shoulder, but her remaining upper extremities and lower extremities showed a full range of motion. *Id.* at 321. Additionally, Fitch used a cane for support but could walk without it. *Id.* at 320. Dr. Yates's impressions were that Fitch had (1) cervical disc disease with radiculopathy, (2) degenerative disc disease of the lumbar spine with radiculopathy, (3) depression, and (4) hypertensive cardiovascular disease. *Id.* at 322.

On February 24, 2011, Dr. William Hand, a medical consultant, assessed Fitch's medical records. Dr. Hand found that Fitch could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour day, and push/pull without limitation. *Id.* at 325.

On November 13, 2012, Dr. Kevin McCarthy performed a clinical physical examination of Fitch and reported Fitch to be "a pleasant, well developed, well nourished 47 [year old] female." *Id.* at 379. Dr. McCarthy also examined Fitch's

---

[2] Hypertrophy is the enlargement or overgrowth of an organ or part due to an increase in size or its constituent cells. *Dorland's Illustrated Medical Dictionary* 859 (29th ed. 2000).

[3] Sclerosis is an induration or hardening, such as hardening of a part from inflammation, increased formation of connective tissue, or disease of the interstitial substance. *Dorland's Illustrated Medical Dictionary* 1611 (29th ed. 2000).

[4] Spondylolysis is the dissolution of a vertebra; a condition marked by platyspondylia, aplasia of the vertebral arch, and separation of the pars interarticularis. *Dorland's Illustrated Medical Dictionary* 1684 (29th ed. 2000).

strength in both her upper and lower extremities and did not find any abnormalities. *Id.* at 379-80.

Regarding Fitch's mental health and substance abuse, on September 29, 2010, Fitch overdosed on Xanax and Soma while having consumed alcohol. *Id.* at 263. Fitch reported being depressed and having suicidal thoughts. *Id.* at 263. Fitch received treatment for her substance abuse from Region 8 Mental Health Center. *Id.* at 301. During her treatment, Fitch was prescribed Abilify and Trazodone. *Id.* at 302. About a month later, Fitch stated the medications were "doing really well for her" and that she was controlling her alcohol consumption. *Id.* at 300. In May and November of 2011, physicians at Region 8 Mental Health Center reported Fitch's mental status as "unremarkable" and "fairly well." *Id.* at 363-64.

On February 2, 2011, Dr. Lisa Yazdani performed a consultative examination of Fitch. *Id.* 313-15. Fitch reported that she had a history of mental health treatment and that she had taken a lot of pills with alcohol in the past. *Id.* at 314. Dr. Yazdani observed that Fitch's "mood was depressed and her affect was liable. . . ." Additionally, Dr. Yazdani found "no indications of hallucinations, delusions, obsessions, or compulsions" and "no disturbanes of memory noted." *Id.* at 315. Dr. Yazdani's impressions were that Fitch suffered from bipolar disorder, panic disorder, and depressions. *Id.* at 315. However, according to Dr. Yazdani, Fitch "appeared to be functioning in the average range of intellect" and "capable of performing activities of daily living and routine, repetitive tasks." *Id.* at 315. Furthermore, Dr. Yazdani found that Fitch's "ability to interact with co-workers

and receive supervision appear[ed] mildly to moderately diminished by her depression and anxiety . . . ." *Id.* at 315.

In March of 2011, Dr. Glenda Scallorn, a medical consultant, assessed Fitch's mental health records. Dr. Scallorn found that Fitch had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. *Id.* at 342.

On September 28, 2010, Fitch applied for disability insurance benefits and supplemental security income payments under the Social Security Act. Fitch alleged disability as of September 25, 2010, due to depression, degenerative disc disease, and problems with her neck, mid-back, and spine. *Id.* at 103; 196. Fitch's claim was denied initially and upon reconsideration; thereafter, Fitch requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 103-06; 123-25. On May 1, 2012, a hearing was convened before ALJ Laurie H. Porciello. On September 5, 2012, the ALJ issued a decision finding that Fitch was not disabled. *Id.* at 21-32. On October 31, 2012, Fitch appealed the ALJ's decision. *Id.* at 15-17. On May 25, 2013, Fitch died, and her widower, Michael Fitch, continued the claim. *Id.* at 12, 14. On February 5, 2014, the Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 5-8.

Aggrieved by the Commissioner's decision to deny benefits, Plaintiff filed a complaint [ECF No. 1] in this Court seeking an order granting benefits to Plaintiff. The Commissioner answered the complaint [ECF No. 5] denying that Plaintiff is

entitled to any relief and filed a motion to affirm the decision of the commissioner [ECF No. 10].

## II. STANDARD OF REVIEW

"The district court shall make a *de novo* determination of the Magistrate's ruling on issues which a party has filed a specific written objection."[5] *Cauthen v. Apfel*, 199 F. Supp. 2d 525, 527 (S.D. Miss. 2001). "[P]arties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (citations omitted). Additionally, a factual objection is not made "by merely reurging arguments contained in the original petition." *Edmond v. Collins*, 8 F.3d 290, 295 n.7 (5th Cir. 1993) (citations omitted). Furthermore, the district court is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (citations omitted).

Although the district court applies a de novo review to the Magistrate's ruling on issues objected to, the Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence

---

[5] *See* 28 U.S.C. § 636(b)(1) (2015); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (finding a district court must engage in a de novo review where a party has objected to a magistrates' decision); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (holding a party filing written objections to the magistrate judge's findings was entitled to a de novo review by the district court).

as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id.*

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617. Moreover, "[p]rocedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citations omitted).

### III. DISCUSSION

Before addressing the Plaintiff's objections, the Court provides a summary of the Administrative Law Judge's (ALJ) decision [ECF No. 6 at 21-32]. As previously stated, Fitch's hearing before the ALJ occurred on May 1, 2012. On September 5, 2012, the ALJ decided that Fitch was not disabled. *Id.* At step one of the evaluation process,[5] the ALJ found the Fitch had not engaged in any substantial gainful

---

[5] The ALJ applied the evaluation process set forth in 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(a).

activity since September 25, 2010, the alleged onset date. *Id.* at 24. At step two, the ALJ found that Fitch suffered from the following severe impairments: mild obesity, cervical disc disease with radiculopathy, degenerative disc disease of the lumbar spine, and substance abuse with depression and anxiety, which are severe while she is abusing substances. *Id.* at 23-24. At step three, the ALJ determined that Fitch had impairments, including a substance abuse disorder that met or medically equaled Listing 12.04 of 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 24.

The ALJ's analysis, however, did not end at step three because there was evidence in the record of drug addition and alcoholism. Accordingly, if an ALJ determines a person is disabled, but there is medical evidence of addiction or alcoholism, the ALJ must determine whether that substance use is a contributing factor material to the disability determination. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 404.1535(a).

Thus, the ALJ reevaluated Fitch's physical limitations. At step two, the ALJ determined that, if Fitch stopped the substance use, she would continue to have a severe impairment or combination of impairments. *Id.* at 25-26. The ALJ also reevaluated Fitch's mental limitations and determined that, if Fitch discontinued her substance use, she would no longer have severe mental limitations, but merely minimal effects. *Id.* at 26.

At step three, the ALJ determined that, if Fitch stopped the substance use, she would not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart p, Appendix 1. *Id.* at 26-27.

In order to make a determination at step four, the ALJ assessed Fitch's Residual Functional Capacity ("RFC").[6] The ALJ found that "[Fitch] would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" subject to certain conditions. *Id.* at 28-29. The ALJ also considered Fitch's nonexertional capacity[7] and found that if Fitch stopped the substance use, she would be capable of meeting the mental demand of work, if limited to performing simple, routine, repetitive tasks. *Id.* at 29. The ALJ concluded that Fitch was not capable of performing past relevant work as a cashier, answering service operator, office clerk, server, quality control worker, or food service manager. *Id.* at 30.

Finally, at step five, the ALJ concluded that, if Fitch stopped the substance abuse, she could perform a significant number of jobs in the national economy. *Id.* at 30-31. Accordingly, the ALJ found that Fitch was not disabled. *Id.* at 30-31.

Plaintiff presents six objections arguing for reversal of the ALJ's decision. *See* ECF No. 14. They are:

> 1) a failure to consider all the medical evidence, 2) a failure to give reasons for rejecting the opinion of Ellen's treating physician, 3) a failure to address Ellen's mental illness and pain, 4) failure to recognize the steps required as discussed in the Judge Posner decision,

---

[6] "Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

[7] Her ability to understand; carry out and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting.

>
> 5) a failure to provide the step-by-step analysis required under the Contract with America Advancement Act [ ], and 6) failure to decide the case on substantial evidence.

*Id.* at 12.

The first objection is the ALJ failed to consider all the medical evidence in rendering its decision, specifically the medical opinions of Dr. Ayanna Jenkins and Dr. Kevin McCarthy. *Id.* at 2. Because Plaintiff did not raise this argument before the magistrate judge, but instead raised it for the first time in his objection, the Court finds that Plaintiff waived this argument.[8] Although Plaintiff waived this argument, the Court will address it. An ALJ "must consider all medical opinions." *Robertson v. Colvin*, No. 1:14CV53, 2015 U.S. Dist. LEXIS 44678, *7 (S.D. Miss. April 6, 2015). Violation of this rule may establish a basis for reversal unless the error is harmless. *Id.* "Harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error . . . . The ALJ's failure to discuss a physician's opinion constitutes harmless error where the ALJ attributes limitations consistent with the doctor's opinions." *Id.* at *7-*8. Plaintiff argues that in disregarding both opinions, the ALJ omitted Fitch's alleged increase in neck pain, the fact that the surgical implants from her 2006 surgery had been recalled, and Fitch's statements claiming she had ceased abusing drugs or alcohol. *See* ECF No. 14 at 2. Here, the ALJ's decision does not appear to evaluate, consider, or explain Dr. Jenkins or Dr. McCarthy's opinions. However, although

---

[8] *See Warren v. Bank of Am., N.A.*, 566 Fed. Appx. 379, 383 n.1 (5th Cir. 2014) (holding a party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge); *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *U.S. v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992).

Fitch claimed to have sudden and constant episodes of bilateral posterior neck pain, Dr. Jenkins did not go into any type of discussion, explanation, or opinion addressing Fitch's alleged neck pain. Instead, the report demonstrates Dr. Jenkins merely prescribed additional pain medication to Fitch. ECF No. 6 at 378. Additionally, in a subsequent report by Dr. McCarthy, he noted that Fitch was "a pleasant, well developed, well nourished 47 [year old] female . . . in no acute distress." *Id.* at 379. Addressing the recall, Dr. McCarthy's report does not provide any discussion stating the plates caused Fitch problems. The only reference to the recall was an order for Fitch to have an MRI to determine if the plates needed to be removed. *Id.* at 380. Furthermore, during Fitch's post-operation appointments, Dr. Garber noted multiple times that there was no evidence of hardware failure. *Id.* at 352, 354. Lastly, Plaintiff relies on the statement "Stopped Drinking Alcohol" under the "Social History" heading to support his argument that Fitch did not have substance abuse issues. *Id.* at 376. This statement is merely conclusory and unsupported by objective medical evidence. Moreover, no where in the report does Dr. Jenkins discuss the use of alcohol. Plaintiff also relies on Dr. McCarthy's urinary drug screen issued to Fitch in which the results were never made known. Plaintiff argues the lack of a negative result supports the conclusion that Fitch does not have substances abuse problems. The Court is not persuaded. The lack of evidence supporting one conclusion does not necessarily provide support for a different conclusion.  Because all issues raised by Plaintiff in relation to both Dr. Jenkins and Dr. McCarthy's opinions were either contradicted by other opinions,

conclusory and/or unsupported, it is not unconceivable the ALJ would have reached a different administration conclusion. Additionally, neither doctor listed limitations relating to Fitch's mental or physical abilities. Accordingly, the ALJ's error is harmless.

Addressing Plaintiff's second argument, the Court finds this argument did not raise a factual objection, but merely reurged arguments contained in the original petition.[9] Accordingly, the Court will not address it.[10]

The Court is not persuaded by Plaintiff's third argument. In the ALJ's Decision [ECF No. 6 at 21-32] the ALJ addresses in detail Fitch's mental issues.[11] Additionally, the Magistrate Judge's Report and Recommendation [ECF No. 13] further explains and summarizes the ALJ's analysis of Fitch's mental issues.[12] Accordingly, both the ALJ and the Magistrate Judge properly and sufficiently addressed Fitch's mental illness and pain.[13]

Regarding Plaintiff's fourth argument, because Plaintiff did not raise it before the Magistrate Judge, but instead raised it for the first time in his objection, the Court finds that Plaintiff waived this argument.[14] Accordingly, the Court will not address it.

---

[9] *See* Pl.'s Brief in Supp. of Summ. J., ECF No. 9 at 10.
[10] *See Edmond*, 8 F.3d at 295 (finding a factual obligation is not made by merely reurging arguments); *Smith v. Collins*, 964 F.2d 483, 485 (5th Cir. 1992)
[11] *See* ECF No. 6 at 24-26.
[12] *See* ECF No. 13 at 7-8; 13-15.
[13] *See Koetting*, 995 F.2d at 40 (holding a district court is not required to reiterate the findings and conclusions of the magistrate judge).
[14] *See* n.8.

In response to Plaintiff's fifth argument, the Court finds Plaintiff merely reurged arguments previously raised.[15] Furthermore, both the ALJ[16] and the Magistrate Judge[17] addressed this objection. Consequently, the Court will not address Plaintiff's fifth argument.[18]

Concerning Plaintiff's last argument, the Court finds Plaintiff merely reurged an argument previously raised[19] and addressed by the Magistrate Judge.[20] Consequently, the Court will not address Plaintiff's last argument.[21]

## IV. CONCLUSION

As required by 28 U.S.C. § 636(b)(1), this Court has conducted an independent review of the entire record and a de novo review of the matters raised by the objections. For the reasons above, this Court concludes Plaintiff's objections to the Report and Recommendation [ECF No. 13] lack merit and should be overruled. Therefore, the Court accepts, approves, and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation [ECF No. 13]. Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation [ECF No. 13] be accepted pursuant to 28 U.S.C. § 636(b)(1), Plaintiff's Motion for Summary

---

[15] *See* ECF No. 9 at 11-12.
[16] *See* ECF No. 6 at 24-31.
[17] *See* ECF No. 13 at 7-9.
[18] *See* N. 13; *Edmond*, 8 F.3d at 295 (finding a factual obligation is not made by merely reurging arguments); *Smith v. Collins*, 964 F.2d 483, 485 (5th Cir. 1992).
[19] *See* ECF No. 1 at 3.
[20] *See* ECF No. 13.
[21] *See* N. 13.

Judgment [ECF No. 8] be **denied**, Commissioner's Motion to Affirm [ECF No. 10] be **granted**, and this matter be dismissed **with** prejudice.

SO ORDERED this, the 15th day of July, 2015.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE
